CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
07/25/2018
JULIA C. DUDLEY, CLERK
BY: s/ F. COLEMAN
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **AMBER LEIGH WORRELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:17-cv-27 |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Amber Leigh Worrell ("Worrell") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Worrell alleges that the Administrative Law Judge ("ALJ") erred by failing to: (1) find that Worrell's post traumatic stress disorder "PTSD" and anxiety conditions met a listing; and (2) properly account for Worrell's moderate impairment in concentration, persistence, or pace.

I agree that the ALJ failed to properly evaluate Worrell's mental impairments under SSR96-8P and conclude that the ALJ failed to properly account for her moderate impairment in concentration, persistence, and pace, and thus the decision is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING in part** Worrell's Motion for Summary Judgment (Dkt. No. 20), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 22), and **REMANDING** this matter for further administrative consideration.

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Worrell failed to demonstrate that she was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In Mascio and Monroe, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. Mascio, 780 F.3d at 636, Monroe, 826 F.3d. at 189. Similarly, I find that remand is appropriate

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

here because the ALJ's opinion leaves the court to guess at how he reached his conclusions regarding Worrell's RFC.

## CLAIM HISTORY

Worrell protectively filed for SSI and DIB on December 13, 2012, claiming that her disability began on September 28, 2011[2], due to bipolar disorder, PTSD, nerve problems, anxiety, and depression. R. 19, 103, 259–263. Worrell's date last insured was June 30, 2012.[3] R. 13. Thus, she must show that her disability began on or before June 30, 2012 and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Worrell's applications at the initial and reconsideration levels of administrative review. R. 103–32. On August 19, 2015, ALJ Mark A. O'Hara held a hearing to consider Worrell's claims for DIB and SSI. R. 39–102. Counsel represented Worrell at the hearing, which included testimony from vocational expert V. Anthony Melanson.

On December 2, 2015, the ALJ entered his decision analyzing Worrell's claims under the familiar five-step process[4] and denying her claim for benefits. R. 19–33. The ALJ found that

---

[2] Worrell initially claimed that her disability began on March 8, 2011; however, at the hearing before the ALJ, she amended her alleged onset date of disability to September 28, 2011.

[3] Worrel was 23 years old on her date last insured, making her a "younger person" under the Act. R.103.

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

Worrell was insured at the time of the alleged disability onset and that she suffered from the severe impairments of bipolar disorder, PTSD, obsessive compulsive disorder ("OCD"), migraines, and obesity.[5] R. 22. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22–25. The ALJ specifically discussed listings 11.01 (neurological impairments), 12.04 (affective disorders), and 12.06 (anxiety disorders). The ALJ concluded that Worrell retained the residual functional capacity ("RFC") to perform a limited range of medium work. R. 25. Specifically, the ALJ found that Worrell "retains the concentration, persistence, and pace to perform only simple, repetitive work." R. 25.

The ALJ determined that Worrell was capable of performing her past relevant work as a cashier and server. R. 31. Thus, the ALJ concluded that Worrell was not disabled. R. 31–32. The ALJ also determined that Worrell could perform other jobs that exist in significant numbers in the national economy, such as laundry worker, order filler, packer, non-governmental mail clerk, stock clerk, and office helper. R. 32. Thus, the ALJ concluded that Worrell was not disabled. R. 33. Worrell appealed the ALJ's decision and the Appeals Council denied her request for review on January 31, 2017. R. 1–3.

## ANALYSIS

Worrell alleges that the ALJ erred by failing to find that Worrell's PTSD and anxiety met listing 12.06 and by failing to properly account for Worrell's moderate impairment in concentration, persistence, or pace in the RFC.

### A. Medical History - Mental Health Impairments

---

[5] The ALJ noted that Worrell did not mention any physical issues during her testimony and indicated that her impairments of migraines and obesity were "questionably severe." R. 22.

4

Worrell presented to Central Virginia Community Services in September 2011 complaining of increased anger, mood swings, anxiety, and appetite and sleep disturbance, and was assessed with unspecified mood disorders and referred for outpatient services. R. 385–88. Worrell attended individual counseling at Horizon Behavioral Health ("Horizon") between 2011 and 2015, though she lacked consistent treatment until late 2013. In November 2011, Worrell was assessed with bipolar disorder, PTSD, and borderline personality disorder. R. 844. Worrel had largely normal findings on mental status examination during her visits to Horizon in 2013, 2014, and 2015.[6] However, she continued to report feeling depressed and anxious, even with medication, being affected by the stress of caring for her toddler and sick mother, and experiencing strong negative emotions related to her sexual abuse as a child.[7] R. 1124, 1609, 1621, 1637, 1688. Worrell also had worsening anxiety after an incident in October 2014, when a stranger threatened her with a gun. R. 1587. However, by December 2014, she reported she was "recovering well" from that incident and that her medications were effective. R. 1712.

### B. Mental Impairments under SSR 96-8P

Worrell argues that the ALJ failed to properly assess her mental impairments as required by SSR 96-8P.[8] See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims,

---

[6] Worrell had normal mental status exams in April, July, October, November, and December 2013. R. 840, 877, 1124, 1634–46. Worrel likewise had normal mental status examinations during all her visits to Horizon in 2014, which included January, March, June, September, October, and December 2014. R. 1584, 1595, 1605, 1609, 1612, 1614, 1622, 1628, 1632, and 1712. Worrell's mental status exams were normal throughout her 2015 visits, as well. R. 1655, 1669, 1679, 1693, 1698, 1701.

[7] In her hearing testimony, Worrell indicated that her mother lived by herself, and that, while she would "occasionally" drive her to a doctor's appointment, Worrell's aunt did the majority of the caretaking. R. 85–86. She also testified that her fiancé was present "most of the time" during the day, and spent a lot of time caring for their son. R. 73–74.

[8] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

SSR 96-8P (S.S.A. July 2, 1996). Specifically, Worrell asserts that the ALJ failed to address her moderate limitations in concentration, persistence, or pace in assessing her RFC, and further failed to provide proper hypothetical questions to the vocational expert that addressed these limitations. The Commissioner counters that the ALJ's "consideration of the medical records allows this Court to perform its function of judicial review." D's Br. at 17, Dkt. No. 24. The Commissioner further argues that, even if the court finds that the RFC did not adequately account for Worrell's moderate limitations in concentration, persistence, or pace, this error is harmless because of the ALJ's alternative, more restrictive RFC.[9] D.'s Br. at 20, Dkt. No. 24.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 U.S. Dist. LEXIS 153878, at *23, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the

---

[9] Without specifically calling it an "alternate RFC," the ALJ wrote:

> The vocational expert also testified that if [Worrell] were further limited to simple, repetitive work in a stable environment that does not involve working with the public and that avoids concentrated exposure to noise, as suggested by the DDS doctors, [she] would still be capable of performing the cited representative medium and light unskilled jobs.

R. 32.

claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

In discussing Worrell's medical records, the ALJ wrote that while her mental health treatment notes "do reflect infrequent abnormalities upon examination," the notes show largely normal mental status examination findings.[10] R. 24, 26. Despite recognizing that Worrell's alleged symptoms included depression, anxiety, panic attacks, flashbacks, difficulty focusing, irritability, and paranoia, the ALJ concluded that "the record simply does not support that these alleged symptoms are as severe as alleged . . . ." R. 29. The ALJ wrote, "Worrell has been diagnosed with bipolar disorder, PTSD and OCD, which has been accounted for in limiting her to simple, repetitive work in the residual functional capacity above." R. 28.

In his hypothetical question to the vocational expert, in addition to limitations imposed for physical impairments, the ALJ stated, "and this individual retains the concentration, persistence, and pace to perform simple, repetitive work." R. 92. Thus, the ALJ imposed "simple, repetitive work" in response to Worrell's moderate limitations in maintaining concentration, persistence, and pace. In Mascio v. Colvin, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)). The Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in

---

[10] The ALJ found that the "record largely reflects that [Worrell's] thought process was logical and goal directed, memory intact, and attention, concentration and executive functioning [] intact." R. 24.

7

concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that without such an explanation, remand was necessary. Id. Thus, while Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, it does underscore the ALJ's duty to adequately review the evidence and explain the decision. This is especially so where, as the ALJ held in Mascio, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work. See also Monroe, 826 F.3d at 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically apply the law to the record).

Here, the ALJ did not explain why a limitation to simple, repetitive work sufficiently accommodates Worrell's moderate difficulty with concentration, persistence or pace. Likewise, under the alternate RFC, limiting Worrell to simple, repetitive work in a stable environment that does not involve working with the public and that avoids concentrated exposure to noise, the ALJ still does not explain how Worrell's limitations are accomodated. Indeed, Worrell testified at the hearing that she had difficulty focusing and suffered flashbacks from sexual abuse as a child more frequently than once a week, which would require her to lie down for several hours, as well as anxiety attacks twice a day. R. 57–60, 65. Further, the state agency physicians found that Worrell had sustained concentration and persistence limitations due to her bipolar disorder and that she was moderately limited in her ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.[11] R. 114, 145. The ALJ did not discuss the

---

[11] The ALJ assigned the mental assessments of the state agency psychiatrist and psychologist partial weight, writing that he "agrees that [Worrell] is somewhat limited with respect to concentration, persistence, and pace and has accounted for those limitations in the RFC" but rejecting their findings regarding her limited social interaction. R. 31.

8

state agency physicians' conclusions that, even though Worrell's bipolar symptoms would limit her ability to maintain attention and concentration for extended periods she "should be able to follow 1-2-3 step repetitive tasks." R. 145, 159. Without some explanation, it is not clear that the ability to follow 1-2-3 repetitive tasks addresses the extent of Worrell's ability to stay on task, and not just complete simple, repetitive work. See Greer v. Colvin, No. 1:14CV00143, 2016 WL 1367745, at *8 (M.D.N.C. Apr. 6, 2016) (unpublished) (finding that giving significant weight to the state agency consultant's opinion that "plaintiff was capable of performing simple tasks" did not adequately explain ALJ's failure to account for plaintiff's moderate difficulties in concentration, persistence and pace because that same consultant noted that plaintiff "may have some difficulty maintaining attention and concentration") (internal citations omitted).

Because the ALJ does not account for Worrell's diminished ability to stay on task, he fails in his obligation to explain why Worrell can do simple, repetitive work, despite her moderate limitations in concentration, persistence, and pace. R. 28. Thus, as in Mascio, this court is "left to guess about how the ALJ arrived at his conclusions." 780 F.3d at 637. In short, the ALJ's failure to explain *why* Worrell's moderate concentration deficits did not translate into additional limitations in the RFC constitutes reversible error and requires remand. See id.; Nichols v. Colvin, No. 7:15-cv-44, 2016 WL 4529780, at *3–*4 (W.D. Va. Aug. 3, 2016); White v. Colvin, No. 4:14-CV-00018, 2015 WL 1958885, at *12 (W.D. Va. May 1, 2015). The ALJ must sufficiently articulate his findings such that the district court can undertake a meaningful review. Monroe, 826 F.3d at 189 (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013)) ("a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence that ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence); see also Patterson

v. Comm'r of Soc. Sec. Admin., 846 F.3d 656, 663 (4th Cir. 2017) (emphasizing the importance of "[r]eaching a decision in a well-reasoned and documented fashion" and admonishing ALJs to "[s]how your work."). Perhaps the ALJ can explain why Worrell's moderate limitations maintaining concentration, persistence, and pace do not require corresponding restrictions in her RFC. However, his failure to do so in this case is reversible error and requires remand.

Finally, contrary to the Commissioner's argument, the Fourth Circuit's recent holding in Sizemore v. Berryhill, 878 F.3d 72, 81 (4th Cir. 2017) does not change the outcome here. In Sizemore, the non-examining state agency consultant found that Mr. Sizemore's "mental health issues imposed moderate difficulties in . . . maintaining concentration, persistence, or pace, but that they were not so severe as to necessarily qualify him for benefits." Id. at 77. She "concluded overall that Sizemore was 'mentally capable of independently performing basic, routine tasks on a sustained basis.'" Id. Another doctor, who performed a psychiatric evaluation, similarly concluded that Sizemore could "understand, retain, and follow simple instructions" and "show sustained attention to perform simple repetitive tasks." Id. at 75. Thus, the Fourth Circuit held that, "the opinions of these two doctors . . . provided substantial support for the ALJ's finding that, despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing "simple one, two-step tasks," as long as he was "working in low stress non-production jobs with no public contact." Id. at 81 (emphasis in original). Worrel's situation must be distinguished, as the ALJ did not discuss, nor has the court found in the record, evidence that despite her moderate limitations in concentration, persistence, and pace, Worrell will be able to *stay on task* while performing simple, repetitive work.

Because I find that remand is warranted based on the ALJ's failure to properly account for Worrell's moderate impairment in concentration, persistence, and pace, Worrell's additional allegations of error will not be addressed. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). However, upon remand, the Commissioner should take into consideration Worrell's remaining allegations of error, including her argument that the ALJ performed a flawed listing analysis by failing to discuss a March 25, 2015 progress note authored by Suzanne Hudson, a licensed counselor.[12]

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 22), **GRANTING in part** Worrell's motion for summary judgment (Dkt. No. 20), and **REMANDING** this matter for additional consideration under sentence four of 42 U.S.C. § 405(g).

The Clerk is directed to transmit the record in this case Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections,

---

[12] Worrell uses an incorrect record cite for Ms. Hudson's progress note, which was signed on March 25, 2015, and references a visit which occurred on March 24, 2015. The March 25, 2015 progress note is located at record cite 1687–88; the record cite referenced by Worrell (R. 468) pertains to Bedford Memorial Hospital in July 2010.

11

including the waiver of the right to appeal.

                                            Entered: July 25, 2018

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge